UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Pao Vang,

                       Plaintiff,

v.

Clearr Corporation, Peter Nelson,
and Zateng Xiong,

                       Defendants.

Civ. No. 04-4306 (RHK/JSM)

**MEMORANDUM OPINION AND ORDER**

---

Patrick Foley of Foley Law Office, Roseville, Minnesota, for Plaintiff.

Emily M. Rome, Howard B. Tarkow, and Dawn C. Van Tassel of Maslon Edelman Borman & Brand L.L.P., Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

Plaintiff Pao Vang alleges that his former employer, Defendant Clearr Corporation ("Clearr") and its employees Peter Nelson and Zateng Xiong, unlawfully discriminated against him based on his disabilities and caused him to endure severe emotional distress in the workplace. This matter comes before the Court on Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

Clearr, a Minnesota corporation located in Minneapolis, Minnesota, manufactures and distributes several kinds of graphic displays used for commercial purposes. (Compl. ¶ 2; Nelson Aff. ¶ 1.) Vang began working at Clearr as a temporary employee in 1995, and was later hired as a permanent worker in the assembly division of the company. (Vang Dep.

Tr. at 9.) The hiring decision was approved by Defendant Peter Nelson, the vice-president, general manager, and plant manager for Clearr. (Nelson Aff. ¶ 4.) Vang was placed under the supervision of Defendant Zateng Xiong, a production manager. (Nelson Aff. ¶ 2.)

During the course of his eight-year employment at Clearr, Vang sustained three work-related physical injuries. On September 13, 2001, he received an electrical shock from assembly equipment, causing him to momentarily lose consciousness. (Vang Dep. Tr. at 71-73.) The severe shock caused two burns on Vang's left hand and resulted in electro-physiologic slowing and abnormalities in the ulnar nerve in Vang's left elbow. (Compl. ¶¶ 5, 7-8.) Vang received medical attention on several occasions following the incident, but continued to have weakness in his arms. (Compl. ¶¶ 6-9.)

On April 10, 2002, Vang injured his right shoulder while lifting and carrying several heavy boxes. (Compl. ¶ 9.) As a result of this incident, Vang's doctor imposed a temporary work restriction limiting Vang to lifting boxes weighing under twenty pounds. (Compl. ¶ 10.) Clearr was given notice of this medical restriction. (Compl. ¶ 9; Nelson Aff. ¶ 5.)

On December 31, 2002, Vang sustained an injury to his spine after moving several boxes weighing approximately thirty-five pounds. (Compl. ¶ 14; Vang Dep. Tr. at 76-81.) Once again, Vang's doctor imposed a temporary lifting restriction, prohibiting him from lifting anything weighing more than fifteen pounds. (Compl. ¶ 15.) Clearr received numerous medical notifications concerning Vang's on-going treatment and restrictions. (Nelson Aff. ¶ 5; Tarkow Aff. Ex. B; Foley Aff. Ex. 5.)

In 2003, Vang filed a claim with the Minnesota Workers Compensation Office, seeking compensation for his work-related injuries. On July 17, 2003, at the completion of a formal hearing, Clearr was ordered to pay for on-going treatment for Vang's injuries and abide by any work restrictions mandated by Vang's doctors. (Tarkow Aff. Ex. D.) Clearr was also ordered to pay Vang a lump sum of $19,500, representing payment for disability benefits. (Tarkow Aff. Ex. E.)

On December 3, 2003, Vang quit his employment at Clearr. (Vang Dep. Tr. at 115.) Vang felt he was forced to resign from his job due to "[Clearr's] hostile actions" in the workplace. (Compl. ¶ 27.) Shortly after leaving Clearr, Vang found employment at a business where he reconditions and sells vehicles. (Vang Dep. Tr. at 58-61.)

On September 9, 2004, Vang filed the instant case in Hennepin County District Court alleging four claims: (1) disability discrimination, (2) racial discrimination on the grounds of hostile work environment and constructive discharge, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. (Compl. ¶¶ 29-57.) The case was removed by Clearr to this Court on October 1, 2004. Vang has since dismissed his claims for racial discrimination. (Mem. in Opp'n at 1.)

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). For

purposes of summary judgment, a fact is "material" if its resolution will determine the outcome of the case, and an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 586-87 (1986).  Upon a motion for summary judgment, the moving party carries the burden of showing there is no genuine issue of material fact, and all evidence and reasonable inferences must be viewed in a light most favorable to the non-moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## ANALYSIS

In this case, Vang alleges three claims: (1) disability discrimination, (2) intentional infliction of emotional distress, and (3) negligent infliction of emotional distress.  (Compl. ¶¶ 29-57.)  Defendants move for summary judgment on all claims.  The Court will address each in turn.

**I.      Disability Discrimination**

Vang alleges disability discrimination under both the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12163, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01-363A.41.  Specifically, Vang argues that Clearr and its employees unlawfully forced him to resign due to medically-imposed lifting restrictions and depression caused by work-related injuries.

Under the ADA, employers are prohibited from discriminating against " a qualified individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Claims under the ADA are subject to the McDonnell-Douglas burden shifting test.[1] Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998). Under the McDonnell-Douglas framework, Vang must first establish a prima facie case of discrimination. Wilking, 153 F.3d at 872. If Vang establishes a prima facie case, the burden shifts to Clearr to articulate a legitimate, non-discriminatory reason for its actions. Wilking, 153 F.3d at 872-73. If Clearr articulates such a reason, the burden shifts back to Vang to demonstrate that the stated reason is pretext for discrimination. Wilking, 153 F.3d at 873. At all times, Vang bears the ultimate burden of demonstrating that discrimination was the real reason for Clearr's actions. Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205 (8th Cir. 1997).

To establish a prima facie case of disability discrimination, Vang must show that: (1) he is disabled within the meaning of the ADA, (2) he was qualified to perform the essential functions of his job, with or without reasonable accommodations, and (3) he suffered an adverse employment action because of his disability. Wilking, 153 F.3d at 872. Summary judgment is appropriate if Vang fails to establish any one of these three elements of his prima facie case. Wilking, 153 F.3d at 873.

---

[1] Claims for disability discrimination under the MHRA are subject to the same standards as ADA claims. Somers v. City of Minneapolis, 245 F.3d 782, 788 (8th Cir. 2001) (citation omitted).

Clearr argues that Vang cannot show the first element of a prima facie case — that he is disabled within the meaning of the ADA. (Mem. in Supp. at 13-16.) The ADA defines a disability as: (1) a physical or mental impairment that substantially limits one or more major life activities, or (2) a record of such an impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). This threshold inquiry requires an individualized analysis of the effects of the claimed impairment on the individual's life activities; what disables one person does not necessarily disable another. Heisler v. Metro Council, 339 F.3d 622, 627 (8th Cir. 2004) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999)).

Vang contends that his depression and physical lifting restrictions qualify as disabilities under the ADA. (Mem. in Opp'n at 9-10.) To prove the existence of a disability, Vang must show that he is substantially limited in a major life activity. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999). An impairment is substantially limiting if it renders a person

> unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(l) (2005). See also Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1088 (8th Cir. 2001).

Vang contends that he is substantially limited by physical lifting restrictions. (Mem. in Opp'n at 9.) From December 2002 until December 2003, temporary restrictions limiting Vang's maximum lifting capacity from ten to twenty pounds were imposed by various doctors. (See Foley Aff. Ex. 5.) At his deposition on July 25, 2005, Vang testified that he "could not lift anything over 10 pounds." (Vang Dep. Tr. at 57.)

Although the Eighth Circuit has identified lifting as a major life activity, the Court has held that a general lifting restriction, without more, is insufficient to constitute a disability within the meaning of the ADA. Brunko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001) (40-pound lifting restriction does not substantially limit working ability); Gutridge v. Clure, 153 F.3d 898, 901 (8th Cir. 1998), cert. denied, 526 U.S. 1113 (1999) (45-pound restriction does not limit a major life activity); Snow, 128 F.3d at 1207 (25-pound restriction does not limit ability to perform major life activity). As required by Brunko, Gutridge, and Snow, Vang has failed to establish "more" evidence to show that his lifting restrictions substantially limit a major life activity. For example, Vang has not presented evidence that the lifting restrictions are permanent or preclude him from holding a job. Therefore, Vang is not disabled within the meaning of the ADA.

Vang also argues that he is substantially limited by depression. (Mem. in Opp'n at 9.) Vang believes he has several symptoms of depression, including lack of concentration, anger control problems, and difficulty sleeping. (Vang Dep. Tr. at 33-55; Mem. in Opp'n at 9.) Vang has not, however, been medically diagnosed with depression or received treatment

from a doctor.[2] (Vang. Dep. Tr. at 33-35.) Although Vang mentioned to his supervisor that "he felt depressed" after his work-related injuries, Vang did not provide Clearr with any information from a doctor regarding his alleged depression. (Vang Dep. Tr. at 38-39.)

Clearr contends that summary judgment is appropriate based on Heisler v. Metropolitan Council, 339 F.3d 622 (8th Cir. 2004). In Heisler, the Eighth Circuit affirmed summary judgment for an employer and concluded that a former employee's depression was not a disability within the meaning of the term under the ADA. 339 F.3d at 630. Although the employee in Heisler suffered from depression for over twenty years and endured therapy and medication for most of that time, the Eighth Circuit determined that she had failed to present evidence sufficient to establish that any associated difficulties rose to the level of substantially limiting major life activities. Id at 360. In this case, not only has Vang never been medically diagnosed with depression by a doctor, but he has also failed to produce evidence that his alleged depression substantially limits one or more major life activities. As in Heisler, Vang has failed to present sufficient evidence to show that he is disabled by depression within the meaning of the ADA.

---

[2] Vang argues that his prescription for Paxil, a medication prescribed to individuals with depression, proves that he has been diagnosed with depression. However, Vang testified that he has not taken "any particular medication for depression." (Vang Dep. Tr. at 35.) In addition, an injury report from October 10, 2002, indicates that Vang was taking Paxil for muscle and joint pain. (See Foley Aff. Ex. 4.)

Based on Vang's inability to show that he is disabled within the meaning of the ADA, he cannot establish a prima facie case of disability discrimination. Therefore, summary judgment for Defendants on this claim is appropriate.

## II.     Intentional Infliction of Emotional Distress

Vang's second claim against Clearr is for intentional infliction of emotional distress. In his Complaint, Vang alleges that Clearr had "a duty to refrain from humiliating, abusive, assaultive, and degrading behavior towards [employees]." (Compl. ¶¶ 46.) Vang alleges "intimidation, threats and other verbally and administratively abusive conduct" by Clearr and its employees in "reckless disregard" of his interests, which caused him severe emotional distress. (Compl. ¶¶ 47.)

To prevail on his claim for intentional infliction of emotional distress, Vang must establish that Defendants' conduct: (1) was extreme and outrageous, (2) was intentional or reckless, (3) caused the plaintiff emotional distress, and (4) the emotional distress was severe. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983); Boone v. Federal Express Corp., 59 F.3d 84, 86-87 (8th Cir. 1995). For conduct to be considered extreme and outrageous, it must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Haagenson v. National Farmers Union Prop. & Cas. Co., 277 N.W.2d 648, 652 n.3 (Minn. 1979). Further, the distress must be so severe that no reasonable person could be expected to endure it. See, e.g., K.A.C. v. Benson, 527 N.W.2d 553, 555 (Minn. 1995) (distress resulted when patient learned that physician who performed gynecological procedures on her was infected with

HIV and had open sores); Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254, 257 (Minn. 1993) (distress resulted when insurer called severely injured insured in hospital and told her that she did not have insurance coverage). "The extreme nature of conduct necessary to invoke this tort, and the necessary degree of severity of the consequent mental distress, clearly reflects a strong policy to prevent fictitious and speculative claims." Hubbard, 330 N.W.2d at 438-39.

In this case, Vang bases his intentional infliction of emotional distress claim on allegations that Clearr was on notice of his work restrictions, but management continued to assign him inappropriate work and then harassed him about his inability to complete work assignments. (Mem. in Opp'n at 13.) For example, Vang alleges that on August 6, 2003, Defendant Nelson assigned him lifting work exceeding his medical restrictions, and then yelled at him to "work faster." (Compl. ¶ 17.) Vang left work humiliated following the incident. (Compl. ¶ 17.) On another occasion, Defendant Nelson commented to Vang that he "worked like a[n] old man," indicating displeasure at the speed of Vang's progress with a work assignment. (Compl. ¶ 23.) As a result of these occurrences, Vang allegedly became severely distressed and eventually developed depression. (Compl. ¶ 28.)

Defendants argue that Vang's allegations do not rise to the level of "extreme and outrageous" conduct as required for a claim under Minnesota law. (Mem. in Supp. at 24-26.) The Court agrees. Even viewing Vang's evidence in a light most favorable to his case, the conduct by Clearr and its employees does not rise to the level of something "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized

community." Haagenson, 277 N.W.2d at 652 n.3. Certainly Vang's claims, if proven, would show insensitive and inappropriate behavior. However, such allegations are insufficient to support a claim for intentional infliction of emotional distress. Therefore, summary judgment for Defendants on this claim is appropriate.

**III.    Negligent Infliction of Emotional Distress**

Vang's third claim is for negligent infliction of emotional distress. Vang alleges that Clearr and its employees placed him in a zone of danger when someone removed a safety pin anchoring a 150-pound weight hanging over his workspace, which caused him to fear for his safety. (Compl. ¶¶ 53-57.) Vang contends that he has suffered injuries as a result of such actions. (Compl. ¶ 55.)

In order to prove a claim for negligent infliction of emotional distress, Vang must establish that he (1) was within a "zone of danger" of physical impact, (2) reasonably feared for his own safety, and (3) suffered severe emotional distress with attendant physical manifestations. See K.A.C. v. Benson, 527 N.W.2d 553, 555 (Minn. 1995); Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1081 (D. Minn. 1998). Vang must show "a situation where it was abundantly clear [he] was in grave personal peril for some specifically defined period of time." See K.A.C., 527 N.W.2d at 557. A claim for negligent infliction of emotional distress is intended to remedy "physically risky, calamitous events." Smith, 9 F. Supp. 2d at 1082.

Vang has presented insufficient evidence to raise genuine issues of material fact regarding whether he was within a zone of danger, reasonably feared for his own safety, and

11

consequently suffered physical manifestations of severe emotional distress.  In his Complaint, Vang alleges that "a co-worker told [him] that someone removed a safety pin from a mechanism holding [a 150-pound object] suspended" above Vang's workspace. (Compl. ¶ 26.)  Vang reported the missing pin to a safety inspector in the area, who immediately fixed the problem.  (Vang Dep. Tr. at 67-68.)  Vang has not offered evidence showing that the missing safety pin could have triggered a collapse of the suspended equipment, or that someone at Clearr was responsible for the missing pin.  Vang has failed to show that he was even aware of the missing pin while working beneath the suspended object.  In addition, Vang has failed to allege that he suffered physical manifestations of severe emotional distress as a direct consequence of this situation.  Because Vang has failed to raise genuine issues of material fact on his negligent infliction of emotional distress claim, summary judgment for Defendants on this claim is appropriate.

## CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, it is **ORDERED** that Defendant Clearr Corporation's Motion for Summary Judgment (Doc. No. 19) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: November 17, 2005                                    s/Richard H. Kyle
                                                                                     RICHARD H. KYLE
                                                                                     United States District Judge